UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| TIMOTHY R. M.,[1]<br><br>    Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,<br><br>    Defendant. | Case No. 20-cv-06712-RMI<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 29, 34 |

Plaintiff, seeks judicial review of an administrative law judge ("ALJ") decision denying his application for supplemental security income under Title XVI of the Social Security Act. Plaintiff's request for review of the ALJ's partially favorable decision was denied by the Appeals Council, thus, the ALJ's decision is the "final decision" of the Commissioner of Social Security which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge (dkts. 9 & 24), and both parties have moved for summary judgment (dkts. 29 & 34). For the reasons stated below, Plaintiff's motion for summary judgment is granted, Defendant's motion is denied.

**LEGAL STANDARDS**

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs*., 44 F.3d 1453, 1457 (9th Cir. 1995). The phrase

---

[1] Pursuant to the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States, Plaintiff's name is partially redacted.

"substantial evidence" appears throughout administrative law and directs courts in their review of factual findings at the agency level. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1154 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

**PROCEDURAL HISTORY**

On April 28, 2017, Plaintiff filed an application for supplemental security income under Title XVI, alleging an onset date of December 31, 2015. *See* Administrative Record "AR" at 15.[2] As set forth in detail below, the ALJ found Plaintiff not disabled prior to February 14, 2019 (but disabled after that day), and so the ALJ partially denied Plaintiff's application on September 13, 2019. *Id*. at 27. The Appeals Council denied Plaintiff's request for review on July 28, 2020. *See id*. at 1-6. Thereafter, on September 24, 2020, Plaintiff sought review in this court (dkt. 1) and argued, *inter alia*, that the ALJ failed to give legally adequate reasons in evaluating Plaintiff's credibility and in evaluating the opinion of an examining psychologist; additionally, Plaintiff also asserted that the residual functioning capacity ("RFC") was not based on substantial evidence for various reasons including because the ALJ overlooked certain components of the functional limitations findings opined by Bill Hennings, Ph.D., a non-examining state agency consultant. *See generally* Pl.'s Mot. (dkt. 29) at 9-13.

**SUMMARY OF THE RELEVANT EVIDENCE**

Two things should be noted at the outset such as to narrow the focus of the present inquiry.

---

[2] The AR, which is independently paginated, has been filed in several parts as a number of attachments to Docket Entry #18. *See* (dkts. 18-1 through 18-11).

First, Plaintiff's disability claim is attended with an alleged onset date of December 31, 2015. *See* AR at 15; *see also* Pl.'s Mot. (dkt. 29) at 5. Second, the ALJ's partially favorable decision found Plaintiff to be disabled on and after February 14, 2019. *See* AR at 26-27. Accordingly, the relevant period that is before this court – and, thus, the relevant inquiry – is whether or not the record (if sufficiently developed) establishes Plaintiff's disability between the onset date (December 31, 2015) and the date from which the ALJ found him to be disabled (February 14, 2019). The following is therefore a statement of the evidence that is relevant to this inquiry, as bounded by these two dates.

*Hearing Testimony*

Three months after the date from which he would eventually be found disabled by the ALJ, Plaintiff appeared for a hearing before the ALJ on May 3, 2019. *See id*. at 38-52. Plaintiff testified at length about the limitations associated with his memory impairment, his seizure disorder, his incontinence, and various other conditions – however, none of Plaintiff's testimony is tethered to the period in question (December 31, 2015 to February 14, 2019). *See generally id*. Because the hearing took place on May 3, 2019, and because Plaintiff was questioned and testified in the present tense – it is impossible for this court to determine the state of Plaintiff's conditions during the various portions of the relevant period from his testimony.

The ALJ also heard testimony from a non-examining medical expert – David Peterson, Ph.D. – who is a psychologist and a professor. *See id*. at 52. While less indeterminate than Plaintiff's testimony – temporally speaking – Dr. Peterson's testimony is similarly unclear as to whether or not some or all of it pertains to the relevant period in question. *See id*. at 52-60. Following that testimony, the ALJ next heard the testimony of Plaintiff's younger brother. *See id*. at 61-65. No unlike Plaintiff's testimony, the testimony of his brother focused on the limitations Plaintiff experiences as a result of his conditions; however, this testimony was also rendered in the present tense, leaving this court unable to determine how much of it (if any) relates to the relevant period in question. *See id*. Unfortunately, the same is true of the testimony rendered by the vocational expert ("VE"). *See id*. at 65-72.

//

*Examining Consultants' Opinions*

Plaintiff was examined by two psychologists in this case – both of whom were one-time examining consultants. *See id*. at 491-94, 500-12. The first of these evaluations took place on May 14, 2018, when Plaintiff was referred to Aparna Dixit, Psy.D., at the behest of the California Department of Social Services. *See id*. at 491-94. Dr. Dixit conducted some degree of records review, a clinical interview, and a mental status examination; she also administered a series of diagnostic instruments such as the Wechsler Adult Intelligence Scale-IV ("WAIS-IV"), the Wechsler Memory Scale-IV ("WMS-IV"), and both parts of the Trail Making Tests. *Id*. at 491. Dr. Dixit's report contained what appear to be a number of internal inconsistencies. For example, at one point, Dr. Dixit noted that Plaintiff's "working and short-term memory [were] assessed to be unimpaired." *Id*. at 492. However, when discussing the results of the WMS-IV, Dr. Dixit noted that Plaintiff's "auditory memory index and visual working memory index scores fell within the low average range [and] [t]he claimant's performance suggests mildly compromised auditory and visual working memory functioning." *Id*. at 493. Similarly, Dr. Dixit noted that Plaintiff's full-scale IQ score ("FSIQ") of 73 placed him in the range of borderline intellectual functioning range (*see id*. at 493), however, elsewhere in the report, Dr. Dixit stated that "[n]o significant cognitive deficits were evident upon examination." *Id*. at 494. Dr. Dixit found Plaintiff to be unimpaired in most categories of work-related functioning, except that she found him to be "mildly impaired" in his ability to retain and follow complex and detailed instructions, and mildly impaired in his ability to work with the public. *Id*. In the end, several of Dr. Dixit's findings gave rise to a series of questions that would need to be answered in order for the record to be properly developed as to the precise scope of her findings and the exact nature of the reasoned basis for her conclusions.

On November 5, 2018, Plaintiff was referred to Katherine Weibe, Ph.D., for a psychological consultative examination by his attorneys. *See id*. at 500-513. Dr. Weibe's conclusions set forth a number of limitations that were expressed in terms that also appear sufficiently vague such as to have similarly triggered the ALJ's duty to further develop the record (which did not happen). *See id*. at 508. For example, Dr. Wiebe opined that Plaintiff has a severe overall impairment in memory and executive abilities, however, Dr. Weibe does not discuss or

4

1   mention the durational aspect of this impairment, leaving this court in the dark as to the onset date
2   or duration of those limitations. *See id*. at 508. Similarly, Dr. Wiebe opined that Plaintiff's
3   cognitive functioning problems "make it difficult for him to attend to, remember, and follow
4   through with directional tasks," however it remains unclear to this court precisely *how difficult*
5   that might be, and whether or not such difficulty is surmountable. *See id*. Likewise, Dr. Weibe's
6   observation that Plaintiff would experience "difficulties with interpersonal relationships" suffers
7   from the same problem. *See id*. The same is true for Dr. Weibe's conclusion that Plaintiff "would
8   have difficulties being able to relate and communicate effectively with supervisors, co-workers,
9   and the public in a regular work environment." *Id*. This statement gives rise to more questions
10  than answers – leaving the court to wonder about the extent of those difficulties or whether or not
11  certain work environments might abate (or aggravate) those difficulties. Lastly, the same is true of
12  Dr. Weibe's conclusion that Plaintiff "would *likely* have difficulty being able to effectively and
13  consistently perform a regular job for the foreseeable future, even if he were never to use any
14  alcohol again." *Id*. (emphasis added). Once again, the court would need to know what exactly is
15  meant by use of the qualifier "likely," and whether or not the "difficulty" would be surmountable.
16  Furthermore, while it appears to be perhaps inconsistent with the opinions expressed in the
17  conclusion section of her report, an attachment to Dr. Weibe's report appears to opine marked
18  limitations in every category of mental ability and aptitude needed to do unskilled work – but that
19  same chart also opines lesser (moderate) limitations as to two of the *same* categories. *See id*. at
20  512. Thus, not unlike Dr. Dixit's report, a number of Dr. Wiebe's findings gave rise to a series of
21  questions that Dr. Wiebe would need to answer in order for the record to be properly developed as
22  to the precise nature of her findings and the exact nature of her reasoned basis for those
23  conclusions.

24  **THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY**

25      A person filing a claim for social security disability benefits ("the claimant") must show
26  that he has the "inability to do any substantial gainful activity by reason of any medically
27  determinable physical or mental impairment" which has lasted or is expected to last for twelve or
28  more months. *See* 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909. The ALJ must consider all evidence in

5

the claimant's case record to determine disability (*see id*. § 416.920(a)(3)), and must use a five-step sequential evaluation process to determine whether the claimant is disabled (*see id*. § 416.920). "[T]he ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

Here, the ALJ set forth the applicable law under the required five-step sequential evaluation process. *See* AR at 16-17. At Step One, the claimant bears the burden of showing he has not been engaged in "substantial gainful activity" since the alleged date on which the claimant became disabled. *See* 20 C.F.R. § 416.920(b). If the claimant has worked and the work is found to be substantial gainful activity, the claimant will be found not disabled. *See id*. The ALJ in this case found that Plaintiff had not engaged in substantial gainful activity during the relevant period. *See* AR at 17. At Step Two, the claimant bears the burden of showing that he has a medically severe impairment or combination of impairments. *See* 20 C.F.R. § 416.920(a)(4)(ii), (c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)). At Step Two, the ALJ found that Plaintiff suffered from the following severe impairments: seizure disorder, affective disorder with depression and anxiety, and a neurocognitive disorder with progressive memory loss. *See* AR at 17.

At Step Three, the ALJ compares the claimant's impairments to the impairments listed in appendix 1 to subpart P of part 404. *See* 20 C.F.R. § 416.920(a)(4)(iii), (d). The claimant bears the burden of showing his impairments meet or equal an impairment in the listing. *Id*. If the claimant is successful, a disability is presumed and benefits are awarded. *Id*. If the claimant is unsuccessful, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to Step Four. *See id*. § 416.920(a)(4)(iv), (e). Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments. *See* AR at 18-21. Next, the ALJ determined that (prior to February 14, 2019) Plaintiff retained the RFC to perform medium work with certain limitations (*id*. at 21-22), while formulating a different, more restrictive RFC for the period following February 14, 2019 (*see id*.

at 23-25).

At Step Four, the ALJ determined that Plaintiff is unable to perform his past relevant work because he has no past relevant work. *Id.* at 25. Lastly, at Step Five, based on the RFC as formulated, and the testimony of the VE, the ALJ found that: (1) beginning on February 14, 2019, Plaintiff has been disabled because there are no jobs that exist in significant numbers in the national economy that Plaintiff can perform; but, (2) prior to February 14, 2019, Plaintiff could still have performed the functions of certain jobs that exist in significant numbers in the national economy such as a kitchen helper, a laundry worker, or a warehouse worker. *See id.* at 25-27. Thus, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, at any time prior to February 14, 2019, but that he became disabled on that date and has continued to be disabled through September 13, 2019, the date of the ALJ's decision. *Id.* at 27.

## DISCUSSION

After assigning various errors to the ALJ's handling of this case, Plaintiff asks the court to reverse the ALJ's partial non-disability finding (as to the period between December 31, 2015, and February 14, 2019) because, *inter alia*, there are no outstanding issues that must be resolved before a determination of disability can be made, and because "it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *See* Pl.'s Mot. (dkt. 29) at 14. For the following reasons, the court disagrees.

First, Plaintiff submits that it was error for the ALJ to render an adverse credibility finding as to his testimony using the now-familiar boilerplate explanation that appears in nearly every ALJ decision. *See id*. at 13. However, given that Plaintiff testified in the present tense at a hearing that took place on May 3, 2019 (which was, *after* the period that is now at issue), even if the court were to credit the entirety of Plaintiff's testimony as true, doing so would shed no additional light on Plaintiff's condition and its attendant limitations <u>during the period in question</u>**.** Accordingly, while the ALJ's adverse credibility determination was indeed attended with an explanation that was neither specific, nor clear, nor convincing – the present circumstances do no lend themselves to an application of the credit-as-true doctrine because the record (as to Plaintiff's testimony) is woefully underdeveloped. During the hearing of May 3, 2019, the ALJ did not develop a record

7

that might involve any specific testimony by Plaintiff (or his brother) about the limitations Plaintiff might have experienced during any particular portion of the approximately 3-year period that is now in dispute. Therefore, the court cannot conclude (as it pertains to the hearing testimony) that there are no outstanding issues that must be resolved before a disability determination can be made, and the court also cannot conclude that it is clear from the record that the ALJ would be required to render a disability finding on remand (as to the period in question) if Plaintiff's temporally-vague testimony were to be herein credited as true. Even crediting Plaintiff's testimony as true and remanding for further proceedings would not be useful here because significant additional testimony from Plaintiff would be required in order for an adjudicator to intelligently determine the extent to which Plaintiff's limitations were in effect between December of 2015 and February of 2019. Accordingly, the only proper remedy here is an open remand for another hearing before the ALJ – one that would be properly focused on the relevant period in question.

Similarly, Plaintiff premises his request for a reversal of the ALJ's non-disability finding as to the roughly 3-year period currently at issue on the fact that the ALJ failed to provide specific and legitimate reasons for rejecting the opinions of Dr. Weibe. *See* Pl.'s Mot. (dkt. 29) at 12-13. In this regard, Plaintiff's argument is given short shrift; indeed, Plaintiff's motion barely dedicates seven sentences to this argument. *See id*. While Plaintiff is correct that the ALJ's explanation for discounting Dr. Wiebe's opinions fell short of the relevant standard, crediting the entirety of her report as true would be attended with the same problems that were discussed above as to Plaintiff's testimony and that of his brother. Specifically, Dr. Weibe's report gave rise to a number of questions due to some disharmony between that which she opined in the conclusion section of her report (e.g., largely using vague terms such as stating that Plaintiff would "likely have difficulty" in various areas) (*see* AR at 508) without explaining *how likely* or *to what extent*, while an attachment to her report seemed to opine marked limitations in most categories of functioning (but also opining lesser limitations as to two of those same categories) (*see id*. at 512). Then there is the fact that Plaintiff is essentially asking this court to overlook the stark differences between the limitations opined by Drs. Dixit and Wiebe. Intelligently weighing these conflicting opinions

requires pointed and focused record development – each of these professionals would first need to be asked a number of questions, the responses to which could be relied upon to iron out any internal inconsistencies or disharmonies in their individual reports, and then each of them should be asked enough questions about their methodologies and rationales such that an adjudicator could intelligently and fairly decide which set of opined limitations is more sensible. Anything less would cause a decision-maker to render an arbitrary decision when choosing between the two sets of conflicting opinions.

For these reasons, the court concludes – *sua sponte* – that the record was insufficiently developed as to the roughly 3-year period in question for this court to perform the substantial evidence review contemplated by statute. Although it is true that neither party has raised an issue regarding the ALJ's failure to properly develop the record, the court can and should raise and address that issue *sua sponte* because the court has an independent duty to determine whether the ALJ's findings (in every regard) are supported by substantial evidence. *See e.g. Sims v. Apfel*, 530 U.S. 103, 110 (2000) (explaining that an appeal from the denial of Social Security benefits is quite unlike ordinary civil litigation because the underlying claims process before the ALJ is not adversarial). Therefore, while claimants must carry the burden of demonstrating that they qualify for benefits, the law does not leave them entirely to their own devices; as such, lapses and omissions in pleading or procedure cannot be relied upon to withhold benefits from a claimant who may otherwise be entitled to them. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 n.3 (9th Cir. 1999). As such, when such a case is before this court, while a plaintiff must make his or her own arguments for remand, that does not relieve this court of its independent duty to effect a fulsome and searching review of the facts and to render a thorough and independent determination as to whether the ALJ's findings are supported by substantial evidence. *Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985). In therefore cannot be reasonably contended that the failure by a Plaintiff or his counsel to raise an error is an acceptable reason for a court to actively ignore it. *See Ariz. State Dep't of Pub. Welfare v. Dep't of Health, Educ. & Welfare*, 449 F.2d 456, 472 (9th Cir. 1971); *Hess v. Sec'y of Health, Educ. & Welfare*, 497 F.2d 837, 840 (3d Cir. 1974); *see also Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). A significant number of courts faced with this issue

have arrived at a similar conclusion. *See e.g., Farley v. Colvin*, 231 F. Supp. 3d 335, 339-41 (N.D. Cal. 2017) (collecting cases standing for the proposition that while a remand request is normally made by a party, there is no reason why a district court may not remand, *sua sponte*, for an error that was not raised); *see also Cortes v. Berryhill*, No. 3:16-cv-01910 (JCH), 2018 U.S. Dist. LEXIS 45256, 2018 WL 1392903, at *2-6 (D. Conn. March 19, 2018) (court *sua sponte* raised issue of ALJ's failure to develop the record and reversed and remanded because it "could not ignore" a gap in record of mental health treatment); *Peterson v. Commissioner of Social Security Admin.*, No. 16-2912, 2018 U.S. Dist. LEXIS 26355, 2018 WL 953345, at *1 n.1 (D. N.J. Feb. 20, 2018) (same); *Taylor-Tillotson v. Colvin*, No. 13-80907-CIV-WM, 2014 U.S. Dist. LEXIS 177510, 2014 WL 7211888, at *13 (S.D. Fl. Dec. 18, 2014) ("A reviewing court may *sua sponte* address issues in social security cases"); *Mangan v. Colvin*, No. 12 C 7203, 2014 U.S. Dist. LEXIS 120515, 2014 WL 4267496, at *1 (N.D. Ill. Aug. 28, 2014) (same); *Gravel v. Barnhart*, 360 F. Supp. 2d 442, 452 n.24 (N.D.N.Y. 2005) (noting additional issues that warrant remand *sua sponte*).

       The Court of Appeals for the Ninth Circuit has repeatedly stated that ALJs have a duty to develop the record in such a manner as to allow for a full and fair disability determination. This "duty to fully and fairly develop the record" is meant to "assure that [a] claimant's interests are considered." *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 930 (9th Cir. 2014) (citation omitted); *see also Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) ("In making a determination of disability, the ALJ must develop the record and interpret the medical evidence."). It should also be noted that an ALJ has broad discretion in determining whether to order further consultative examinations when it may be necessary to resolve ambiguities or other inadequacies in the body of evidence. *See Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001) (citation omitted); *see also* 20 C.F.R. § 404.1519a(b) ("We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim."); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an

1  appropriate inquiry.'" (citing *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)). This duty to

2  develop the record is incumbent and applicable even when claimants are represented by counsel.

3  *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). Further, "[i]n cases of mental impairments,

4  this duty is especially important." *See DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1990); *see*

5  *also Tonapetyan*, 242 F.3d at 1150 ("The ALJ's duty to develop the record fully is also heightened

6  where the claimant may be mentally ill and thus unable to protect her own interests.").

7        Here, once the ALJ decided to bifurcate the disability period by rendering a partially

8  favorable decision and finding Plaintiff disabled on and after February 14, 2019, the ALJ was

9  obligated to review the record in order to determine whether it had been fully and fairly developed

10 as to the roughly 3-year period for which a non-disability finding was rendered. *See e.g. Garcia*,

11 768 F.3d at 930 (explaining that the imposition of such a duty on ALJs is designed to assure than a

12 claimant's interests are considered). Then there is the fact that the two consultative psychological

13 examiners produced reports that contained both internal inconsistencies, as well as being wildly

14 divergent from one another in the limitations that were opined. All of this was substantially

15 ignored by the ALJ and simply glossed over. Because of that, the Commissioner is **ORDERED** to

16 direct the ALJ on remand: (1) to conduct a new hearing such as to question Plaintiff (and any other

17 interested witness, such as his brother) about any pertinent limitations attending his conditions

18 during the relevant period at issue; (2) to secure pertinent testimony or to submit sufficient

19 interrogatories (or to permit Plaintiff's counsel to do so) to Drs. Dixit and Wiebe in order to iron

20 out the internal inconsistencies in each of their reports, and also to allow for an objective

21 evaluation and weighing of each and every one of their respective findings and conclusions that

22 were negated or contradicted by the other's report; and (3) to clearly set forth a thorough and

23 reasoned analysis as to the ALJ's evaluation and consideration of the entirety of the hearing

24 testimony and the opinions of the two consultative psychological examiners.

25       Lastly, because the court is remanding for further proceedings that would require a great

26 deal of further record development, the court declines to address Plaintiff's remaining issues not

27 only because they can be adequately addressed on remand, but also because the calculus

28 underlying those issues will quite likely change on remand given the holdings expressed herein.

*See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Gutierrez v. Comm'r of Soc. Sec.*, No. 18-cv-02348-RMI, 2019 U.S. Dist. LEXIS 165711, at *30-31 (N.D. Cal. Sep. 25, 2019); *Abdul-Ali v. Berryhill*, No. 18-cv-03615-RMI, 2019 U.S. Dist. LEXIS 138512, 2019 WL 3841995, at *7 (N.D. Cal. Aug. 15, 2019); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

In any event, on remand, the Commissioner is **ORDERED** to consider the other issues raised in Plaintiff's briefing and to modify any ensuing ALJ opinion such as to reflect the fact that the issues raised in this case by Plaintiff have been considered and addressed. *See Cortes v. Colvin*, No. 2:15-cv-02277-GJS, 2016 U.S. Dist. LEXIS 40580, 2016 WL 1192638, at *4 (C.D. Cal. Mar. 28, 2016); *Cochran v. Berryhill*, No. 3:17-cv-00334-SB, 2017 U.S. Dist. LEXIS 212380, at *21 (D. Or. Dec. 28, 2017); *Steven M. v. Saul*, No. 19-cv-06991-RMI, 2021 U.S. Dist. LEXIS 52225, at *16-17 (N.D. Cal. Mar. 19, 2021).

## CONCLUSION

As described above, Plaintiff's summary judgment motion (dkt. 29) is **GRANTED**, Defendant's summary judgment motion (dkt. 34) is **DENIED**, and the case is **REMANDED** for further proceedings consistent with the instructions provided herein.

**IT IS SO ORDERED.**

Dated: March 28, 2022

ROBERT M. ILLMAN
United States Magistrate Judge